UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD R. PETERSON, *not individually but as chapter 7 Trustee for the bankrupt estates of Lancelot Investors Fund, L.P., Lancelot Investors Fund II, L.P., Lancelot Investors Fund Ltd.*, ) ) ) ) ) ) | |
| | No. 10 C 8038 |
| Plaintiff, ) ) | Judge Sara L. Ellis |
| v. ) ) | |
| EIDE BAILLY, LLP, ) ) | |
| Defendant. ) | |

## OPINION AND ORDER

This is one of several suits brought by Ronald Peterson (the "Trustee") as the bankruptcy trustee for Lancelot Investors Fund, L.P., Lancelot Investors Fund II, L.P., and Lancelot Investors Fund Ltd. (the "Lancelot Funds"), in which the Trustee seeks to recover the Lancelot Funds' losses resulting from a Ponzi scheme perpetrated by Thomas Petters.[1] In this action, the Trustee seeks to recover from Eide Bailly, LLP ("Eide Bailly"), an accounting firm that was hired in 2008 to audit the financial statements of Thousand Lakes, LLC ("Thousand Lakes"), a special purpose vehicle through which the Lancelot Funds loaned money to Petters' scheme. The Trustee alleges that, in performing the audit, Eide Bailly made negligent misrepresentations that are actionable under Minnesota law. Eide Bailly has moved for summary judgment based on the *in pari delicto* defense—"the idea that, when the plaintiff is as culpable as the defendant,

---

[1] Other actions brought by Peterson include *Peterson v. McGladrey & Pullen, LLP*, No. 10 C 274 (N.D. Ill.) (the "*McGladrey* action"); *Peterson v. Bell*, No. 08-28225, Adv. No. 09-1252 (Bankr. N.D. Ill.); *Peterson v. Swiss Fin. Servs. (Bahamas), Ltd.*, No. 08-28225, Adv. No. 09-1283 (Bankr. N.D. Ill.); *Peterson v. Somers Dublin Ltd.*, No. 08-28225, Adv. No. 10-1980 (Bankr. N.D. Ill.); *Peterson v. Winston & Strawn LLP*, No. 11 C 2601 (N.D. Ill.); and *Peterson v. Katten Muchin Rosenman LLP*, No. 12 C 3393 (N.D. Ill.).

if not more so, the law will let the losses rest where they fell." *Peterson v. McGladrey & Pullen, LLP* (*McGladrey II*), 676 F.3d 594, 596 (7th Cir. 2012). Eide Bailly contends that the court in the *McGladrey* action already decided the relevant issues and issue preclusion bars the Trustee from relitigating them here. Because the Court finds that issue preclusion applies, establishing the *in pari delicto* defense, the Court grants Eide Bailly's motion for summary judgment [109].

## BACKGROUND

I. **The Present Action**

    A. **The Second Amended Complaint's Allegations**

Because Eide Bailly's summary judgment motion relies on issues decided in the *McGladrey* action, for background purposes, the Court takes the following allegations from the Trustee's second amended complaint: Gregory Bell formed the Lancelot Funds in 2002 to invest in collateralized short-term trade finance notes ("SPV notes") issued by Thousand Lakes. Bell represented and managed the Funds through his management company, Lancelot Management. Thousand Lakes, along with other Petters-controlled entities, purportedly engaged in the business of acquiring and reselling consumer electronics to retailers such as Costco. Thousand Lakes' inventory of electronics stored in warehouses and accounts receivable from Costco and its subsidiary, National Distributors, were to collectively serve as collateral for the SPV notes. All transactions were well-documented, although it later turned out that the documents were fabricated. Petters also put in place a lockbox arrangement giving the Funds control over the bank account into which Costco was to wire payments for the goods, a mechanism intended to provide the Funds with further investment protection.

In December 2007, Thousand Lakes did not make scheduled payments on the SPV notes. Petters represented this was a temporary delay caused by Costco being late in paying Thousand

2

Lakes' invoices.  In January 2008, as the delay continued, Petters offered to exchange collateral with the Funds, taking past due SPV notes collateralized by Thousand Lakes' accounts receivable from Costco and exchanging them for current SPV notes collateralized by Thousand Lakes' accounts receivable from Walmart or other retailers.  Bell agreed to this proposal conditioned on an audit.  In February 2008, Petters agreed, retaining Eide Bailly to audit Thousand Lakes.  Bell then purchased new SPV notes, with Thousand Lakes using that money to repay the past due SPV notes, engaging in what have been referred to as "roundtrip transactions" between the Funds and Thousand Lakes.

On June 5, 2008, Eide Bailly issued an unqualified audit opinion, representing that the 2006 financial statements fairly represented Thousand Lakes' then financial position and that at the time of the audit, Thousand Lakes was a going concern.  The Trustee seeks to hold Eide Bailly liable for "failing to uncover that Thousand Lakes was a sham with no sales, no inventory and no accounts receivable."  Doc. 73 ¶ 15.  Specifically, the Trustee alleges that Eide Bailly negligently represented to the Funds that "(1) Thousand Lakes' financial statements fairly presented its financial position as of December 31, 2006—a company with over $2 billion in sales revenue and over $1 billion of collateral; and (2) Thousand Lakes was, as of June 5, 2008, a real (not sham) company with substantial sales, inventory and accounts receivable."  *Id.*  The audit allegedly caused the Funds to continue making collateralized loans to Thousand Lakes after June 5, 2008, totaling $326.15 million, filing UCC statements reflecting their secured collateral, paying insurance premiums totaling $985,200.03 to insure their collateral, paying Swiss Financial $124,055.94 for investment-related services, and paying Lancelot Management $12,624,276 to manage the Funds.

The Trustee alleges that Bell was never a co-conspirator in Petters' fraud and was unaware of any significant problems, only learning of Petters' scheme when the FBI raided Petters' office in September 2008. The Trustee admits, however, that Bell pleaded guilty to wire fraud in 2009 because the roundtrip transactions concealed from the Funds' investors that Thousand Lakes' payments were delayed by Costco's payment delay.

B.   **Procedural History**

The Trustee filed this action on December 17, 2010. Eide Bailly moved to dismiss the complaint based in part on the *in pari delicto* defense, but the Court declined to do so, finding disputed issues of fact at the pleading stage. Doc. 36. Eide Bailly then filed an answer, asserting *in pari delicto* among other affirmative defenses, specifically arguing that the Trustee could not recover because the "Funds, by and through their management, engaged in fraudulent and/or negligent acts or omissions in regard to the Funds' investments, and thereby are at fault for their own alleged injuries," which conduct Eide Bailly contended is imputed to the Trustee. Doc. 37 at 20–21. The Trustee filed a Second Amended Complaint on December 19, 2013. The parties agreed that Eide Bailly did not have to file an answer to the Second Amended Complaint. *See* Doc. 76 at 2 n.1; Doc. 77 ¶ 4. The parties stipulated that Eide Bailly's answer to the Amended Complaint stands as the answer to the Second Amended Complaint and that Eide Bailly adopted the affirmative defenses it raised in that answer as affirmative defenses to the Second Amended Complaint. *See* Doc. 122. The Court stayed the proceedings pending the outcome of the appeal in the *McGladrey* action, which the parties agreed would shed light on the application of the *in pari delicto* doctrine in this case. *See* Doc. 95. After the Seventh Circuit's decision in the *McGladrey* action, the Court granted Eide Bailly leave to file the motion for summary judgment that is the subject of this Opinion.

## II. The *McGladrey* Action

In the *McGladrey* action, the Trustee sued three related accounting firms (collectively, "McGladrey"), alleging that, in audits McGladrey performed in 2007 and 2008, McGladrey failed to uncover Petters' fraud between 2003 and 2007. *See Peterson v. McGladrey & Pullen, LLP* (*McGladrey III*), No. 10 C 274, 2014 WL 1389478, at *1 (N.D. Ill. Apr. 8, 2014), *aff'd*, *Peterson v. McGladrey LLP* (*McGladrey IV*), 792 F.3d 785 (7th Cir. 2015). McGladrey initially filed a motion to dismiss based on the *in pari delicto* defense, which Judge Bucklo granted. *Peterson v. McGladrey & Pullen, LLP* (*McGladrey I*), No. 10 C 274, 2010 WL 4435543 (N.D. Ill. Nov. 3, 2010). In doing so, she found that the defense could be asserted against a bankruptcy trustee. *Id.* at *3. She also refused to apply the "adverse interest" exception to the *in pari delicto* doctrine, finding that the exception applies "only where the corporate officers 'act entirely for their own interests and the actions do not benefit the corporation.'" *Id.* at *4 (quoting *Grede v. McGladrey & Pullen LLP*, 421 B.R. 879, 886 (N.D. Ill. 2009)). Because the Trustee's complaint alleged that the Funds benefitted from the alleged misconduct, Judge Bucklo concluded that the adverse interest exception did not apply. *Id.* The Seventh Circuit vacated Judge Bucklo's decision, however, finding that the allegations of the complaint were sufficient to avoid dismissal at the pleading stage. *McGladrey II*, 676 F.3d at 597. But in doing so, the Seventh Circuit noted that "[t]he Trustee's claims are subject to the same defenses that McGladrey could have asserted had the Funds themselves filed suit," including the *in pari delicto* defense, which was not superseded by federal bankruptcy law. *Id.* at 596, 598–99. Additionally, the Seventh Circuit reached the same conclusion as Judge Bucklo with respect to the adverse interest exception, noting that "Bell was not stealing from the Funds, whether or not he was using them to snooker people who had money to invest." *Id.* at 599.

Back in the district court, after the Trustee amended the complaint, McGladrey sought summary judgment on the *in pari delicto* defense, contending that Bell's "misconduct as the Funds' manager—including making false representations to potential investors about the 'flow of money' among the entities involved in the investment program, and, later, engaging in a series of fraudulent banking transactions in an effort to conceal Thousand Lakes' delinquency on notes held by the Funds—contributed to the Funds' alleged losses." *McGladrey III*, 2014 WL 1389478, at *3. The Trustee argued that *in pari delicto* was not applicable because Bell's misconduct amounted to "a different fraud" than the one he alleged McGladrey missed finding. *Id.* But Judge Bucklo rejected this argument, determining that as long as McGladrey could show that Bell "bears equal fault for the alleged injury, as compared to the fault the Trustee attributes to [McGladrey]," McGladrey established the *in pari delicto* defense. *Id.* (quoting *Knauer v. Jonathon Roberts Fin. Grp., Inc.*, 348 F.3d 230, 233 (7th Cir. 2003)) (internal quotation marks omitted). Judge Bucklo found that McGladrey established beyond dispute that Bell materially misrepresented the flow of money, including with respect to the lockbox account, which "allow[ed] Petters' scheme to flourish." *Id.* at *3–4. Additionally, Judge Bucklo found it undisputed that as the Petters entities ran out of money and Thousand Lakes became delinquent on the notes owned by the Funds, "Bell affirmatively went 'in' with Petters on a fraudulent, 'secondtier Ponzi scheme,'" with this "intentional misconduct [by Bell] on behalf of the Funds increas[ing] the Funds' exposure to the losses that resulted when the Ponzi scheme ultimately fell apart." *Id.* at *4. As a result, "Bell's involvement in the Petters scheme . . . amply establish[ed] that Bell's misconduct contributed to the Funds' losses at least as significantly as the negligence and recklessness with which the Trustee charg[ed] [McGladrey]." *Id.* This barred the Trustee from recovering from McGladrey under the *in pari delicto* defense. *Id.*

The Seventh Circuit affirmed, stating that the Funds "raised money via deceit, against an auditor that negligently failed to detect a different person's fraud." *McGladrey IV*, 792 F.3d at 788. As Judge Bucklo did, the Seventh Circuit rejected the Trustee's argument that the *in pari delicto* defense only applies when the plaintiff and defendant commit the same misconduct, noting that there was no Illinois case "saying that the *in pari delicto* defense applies only when the two litigants have committed the same wrong, as opposed to one failing to mitigate the consequences of the other's wrong," and that it had not been made aware of any Illinois case recognizing liability under similar circumstances, regardless of the doctrine being applied. *Id.*

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

Eide Bailly argues that, as in the *McGladrey* action, Bell's misconduct prevents the Trustee from recovering against it under the *in pari delicto* doctrine. Minnesota courts explain that the doctrine "is based upon judicial reluctance to intervene in disputes between parties who are both wrongdoers in equal fault."[2] *State by Head v. AAMCO Automatic Transmissions, Inc.*, 199 N.W.2d 444, 448 (Minn. 1972); *see also Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 810 (Minn. Ct. App. 2007) ("In pari delicto operates to bar suits between two wrongdoers who are at equal fault."). The Trustee does not contest that the *in pari delicto* doctrine is properly asserted against him, standing in the Funds' shoes. *See McGladrey II*, 676 F.3d at 596, 598–99; *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 836 (8th Cir. 2005) ("[T]he equitable defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor."); *Christians*, 733 N.W.2d at 814 ("[C]ourts regularly consider in pari delicto defenses and act to bar trustee claims on that basis despite the inevitable harm to creditors." (citing *Moratzka v. Morris* (*In re Senior Cottages of Am., LLC*), 482 F.3d 997, 1001 (8th Cir. 2007) (collecting federal bankruptcy cases applying in pari delicto doctrine))).

Eide Bailly contends that the Court need not delve into the details of Bell's misconduct or how the *in pari delicto* defense operates in this action because those issues were already conclusively decided against the Trustee in the *McGladrey* action. Therefore, according to Eide Bailly, issue preclusion bars the Trustee from relitigating Bell's misconduct or the applicability

---

[2] Eide Bailly cites to both Minnesota and Illinois case law with respect to the *in pari delicto* doctrine, representing that the Court need not engage in a choice of law analysis because both Minnesota and Illinois recognize the doctrine and apply it in the same manner. *See* Doc. 110 at n.3. The Trustee argues that Minnesota law differs from Illinois law with respect to the *in pari delicto* doctrine. Because the Trustee's negligent misrepresentation claim is brought under Minnesota law, the Court similarly considers the *in pari delicto* defense under Minnesota law, although it will discuss whether there are any relevant substantive differences between Minnesota and Illinois law below.

of the *in pari delicto* doctrine here. For issue preclusion to apply, Eide Bailly must meet the following elements: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action."[3] *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). Eide Bailly argues it has established all the elements because (1) Judge Bucklo determined (and the Seventh Circuit affirmed) that Bell engaged in misconduct that triggered the *in pari delicto* doctrine, (2) the issue was fully litigated in the *McGladrey* action, (3) the issue was essential to the final judgment, and (4) the Trustee and his counsel are the same here as in the *McGladrey* action. The Trustee responds that issue preclusion cannot apply because the *McGladrey* action was decided under Illinois, not Minnesota, law, which allegedly differs in its application of the *in pari delicto* doctrine, and that the issue of comparative responsibility in the *McGladrey* action was different from that present here. The Court will address the disputed issues in turn.

### A. Minnesota vs. Illinois Law

For issue preclusion to apply, the issue sought to be precluded must be the same as the issue in the prior litigation with respect to both the facts and the law. *Id.*; 18 Wright, Miller, & Cooper, Federal Practice & Procedure § 4425 (2d ed.) ("Identity of the issue is established by showing that the same general legal rules govern both cases . . . . Preclusion should not apply if there has been a change either in the facts or the governing rules."). Here, the decisions concerning the *in pari delicto* defense in the *McGladrey* action were made under Illinois law, while Minnesota law applies to this action. There is some disagreement as to whether this

---

[3] The Court looks to federal common law to determine the preclusive effect of the decisions in the *McGladrey* action. *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008).

automatically defeats issue preclusion or whether the Court should consider whether relevant differences exists between the state laws at issue. *Compare Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (refusing to apply collateral estoppel where issue sought to be precluded was decided under California law of unconscionability and present case involved Illinois law without discussing whether the state laws were different); *Estate of Melin v. Wash. Nat'l Ins. Co.*, No. 14 C 1238, 2015 WL 1260137, at *4 (N.D. Ill. Mar. 17, 2015) (refusing to apply collateral estoppel where Illinois law, not Florida law, governed present case and prior decision was made under Florida law, without addressing whether differences existed between the state laws), *with In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1302 (7th Cir. 1995) ("If there are relevant differences in state law, findings in one suit will not be given collateral estoppel effect in others[.]"); *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012) (applying issue preclusion to claims raised under Ohio state law where prior decision was rendered under Arkansas state law, noting that the elements were "nearly identical" and that Ohio "arguably places a higher burden of proof on plaintiffs," meaning that plaintiffs' claims "would certainly fail" under the heightened standard if they failed under the lower standard); *Quixtar, Inc. v. Brady*, 328 F. App'x 317, 323 n.4 (6th Cir. 2009) (district court erred in stating that because prior case had been decided under a different state law, "it necessarily did not decide the precise issue presented in the instant litigation"). One court in this district refused to apply issue preclusion even where the state laws were shown to be comparable, reasoning that the standards had not developed in the same way. *See Wasau Underwriters Ins. Co. v. United Plastics Grp., Inc.*, No. 04 CV 6543, 2010 WL 538544, at *5 (N.D. Ill. Feb. 10, 2010) (refusing to apply issue preclusion, noting that Illinois and Texas case law had not "developed along identical paths" and that, although similar, the prior decision was

made under Texas' "highly probable" standard while Illinois used an "objectively foreseeable" standard). In another district court case from this Circuit, the court acknowledged that courts have applied issue preclusion where state laws are sufficiently similar but found plaintiffs had failed to meet their burden of showing that the state laws there treated the issue decided in the prior proceeding in the same or comparable way. *See In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 712 F. Supp. 2d 776, 796–98 (N.D. Ind. 2010). Wright and Miller state that the Court should "careful[ly] examin[e] . . . the controlling legal principles," as this "may show that the standards are the same, or that the fact findings have the same effect under either standard, so that the same issue is presented by both systems of law." 18 Wright, Miller, & Cooper, Federal Practice & Procedure § 4417 (2d ed.). "So long as the same issue is presented," then, "preclusion is appropriate unless some special reason for relitigation arises from the nature of the relationship between federal courts and state or foreign courts." *Id.* Under this analysis, with which the Court agrees having reviewed the divergent case law, issue preclusion may be appropriate despite the fact that Illinois law governed the *McGladrey* action while Minnesota law applies here. Thus, the Court must determine whether Minnesota and Illinois law differ as to the material aspects of the *in pari delicto* doctrine.

The Trustee only argues that Minnesota law differs from Illinois law on the *in pari delicto* doctrine in one respect, claiming that Minnesota requires mutual wrongdoing.[4] Specifically, the Trustee maintains that "[t]he plaintiff must be an active, voluntary participant in

---

[4] As otherwise relevant to the issues at hand here, Minnesota also applies the adverse interest exception in the same way the court applied it in the *McGladrey* action. *Compare Christians*, 733 N.W.2d at 810 ("The 'adverse interest' exception prevents imputation, however, if the individual's conduct provides *no* benefit to the corporation." (citing Seventh Circuit case law)), *with McGladrey I*, 2010 WL 4435543, at *4 (rejecting application of adverse interest exception because the complaint alleged that the Funds benefitted from Bell's alleged misconduct).

11

the unlawful activity that is the subject of the suit."[5] Doc. 114 at 11 (quoting *Pinter v. Dahl*, 486 U.S. 622, 636, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988)). Aside from citing numerous non-binding cases from other federal circuit courts of appeals, the Trustee cites *Brubaker v. Hi-Banks Resort Corp.*, a Minnesota appellate court case that noted that the *in pari delicto* doctrine is "based on judicial reluctance to intervene in disputes between parties who are mutually involved in wrongdoing." 415 N.W.2d 680, 683 (Minn. Ct. App. 1987).[6] But a subsequent Minnesota case clarified that *Brubaker*'s use of "mutual" means only that both parties involved in the litigation are wrongdoers, not that both parties must have engaged in the same misconduct, as the Trustee contends. *In re Hansel*, Bankr. No. 02-93495, Adv. No. 08-3177, 2012 WL 3113849, at *11 (Bankr. D. Minn. June 15, 2012) (rejecting the argument made by the Trustee here that mutual wrongdoing is required by *Brubaker*'s statement, citing to *AAMCO*, 199 N.W.2d at 448)). Having reviewed the Trustee's cases and conducted its own thorough review of Minnesota case law,[7] the Court rejects the Trustee's contention that Minnesota requires mutual wrongdoing for

---

[5] In *McGladrey III* and *McGladrey IV*, the Trustee argued that Illinois also had a mutual wrongdoing requirement. *See McGladrey III*, 2014 WL 1389478, at *3 (noting the Trustee's argument that the doctrine "is intended for situations in which the victim is a participant in the misconduct giving rise to his claim" (quoting *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 574 (7th Cir. 2004)); *McGladrey IV*, 792 F.3d at 787 (the Trustee "insists that the *pari delicto* doctrine in Illinois applies only when the plaintiff and the defendant commit the *same* misconduct"). Judge Bucklo found (and the Seventh Circuit affirmed) that a mutual wrongdoing requirement does not exist under Illinois law. *McGladrey III*, 2014 WL 1389478, at *3 (rejecting Trustee's argument that *in pari delicto* defense applied only if Bell knew there was no collateral supporting the SPV notes and no underlying sales, finding instead that all defendants had to show was that "Bell 'bears equal fault for the alleged injury,' as compared to the fault the Trustee attributes to defendants" (quoting *Knauer*, 348 F.3d at 233)); *McGladrey IV*, 792 F.3d at 788 ("The Trustee has not found any Illinois case saying that the *in pari delicto* defense applies only when the two litigants have committed the same wrong, as opposed to one failing to mitigate the consequences of the other's wrong.").
[6] The Trustee also cites to *Katun Corp. v. Clarke*, 484 F.3d 972, 978 (8th Cir. 2007), which merely quotes the same passage from *Brubaker*, for the proposition that Minnesota requires mutual wrongdoing for *in pari delicto* to apply.
[7] The Court found one Minnesota federal court case, decided prior to *In re Hansel*, that required mutually wrongful activity for the *in pari delicto* doctrine to apply. *See Duder v. Donaldson, Lufkin & Jenrette Futures, Inc.*, No. CIVIL 4-85-602, 1986 WL 68626, at *6 (D. Minn. July 22, 1986) (*in pari delicto* doctrine did not apply because plaintiff and defendant's office manager "were not involved together in a

*in pari delicto* to apply, instead finding that Minnesota and Illinois law do not differ on this point. *See id.* at *11–12 (*in pari delicto* doctrine only requires that both parties be wrongdoers and "does not require anything akin to conspiracy or collaboration with a high level of agreement and understanding"); *Christians*, 733 N.W.2d at 814 (*in pari delicto* "operates to prevent wrongdoers at equal fault from recovering against one another" and "does not require a finding of fraud"). Therefore, the fact that the *McGladrey* decisions were made under Illinois law does not prevent Eide Bailly from relying on issue preclusion to bar the Trustee from relitigating the *in pari delicto* defense here.

B. **Comparative Responsibility**

Alternatively, the Trustee argues that the issue of the Funds' comparative responsibility with Eide Bailly was not litigated in the *McGladrey* action, where the Trustee is seeking to recover the post-June 5, 2008 expenses the Funds incurred after receiving Eide Bailly's audited report of Thousand Lakes' financial statements. In the *McGladrey* action, the Trustee contends that the issue was whether the Funds were at least as much at fault as McGladrey, which had audited the Funds, not Thousand Lakes. But this is a distinction without a difference because *McGladrey III* and *McGladrey IV* did not address McGladrey's fault, instead only determining whether the Funds' misconduct was sufficient to preclude recovery in the face of alleged auditor misconduct. *See McGladrey IV*, 792 F.3d at 787 (specifically noting that the district court did not "consider[ ] whether McGladrey had failed to perform its duties"). Similarly, here, the Court is considering the same issue, with the only difference being that Eide Bailly, not McGladrey,

---

scheme or transaction; rather their wrongs were separate events" and so they could not be said to have been "participating in the same fraudulent scheme or transaction"). But *Duder* appears to be an outlier, particularly in light of its age and subsequent developments in the law, both in Minnesota and across the country. *See In re Hansel*, 2012 WL 3113849, at *11; *Rogers v. McDorman*, 521 F.3d 381, 389–90 (5th Cir. 2008) (describing advocated for requirement of "mutual, simultaneous, and relatively equal" fault as "outdated"); *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1090–91 (2d Cir. 1997) (rejecting requirement that mutual fault requires the parties to have engaged in the same wrongdoing).

13

made the alleged negligent misrepresentations in its audit. But comparative responsibility and Eide Bailly's liability does not play a role in the determination, preventing application of issue preclusion here, because based on the Trustee's allegations the Court may assume that the Funds' action were "at least equal in gravity to [Eide Bailly's], if not a greater fault—for the Trustee does not accuse [Eide Bailly] of fraud." *Id.*; *see also Christians*, 733 N.W.2d at 814 (*in pari delicto* and comparative fault defenses are "conceptually distinguishable and do not require simultaneous resolution"); *McGladrey III*, 2014 WL 1389478, at *4 ("Bell's misconduct contributed to the Funds' losses at least as significantly as the negligence and recklessness with which the Trustee charges defendants.").

The Trustee also appears to suggest that because the damages sought in the *McGladrey* action and in this case are different, the issues resolved in the *McGladrey* action are not the same as the ones to be resolved here. But the Trustee sought to recover operational expenses in the *McGladrey* action, just as he does here, including for the post-June 5, 2008 time period. *Compare* Doc. 73 ¶ 66, *with Peterson v. McGladrey*, No. 10 C 274, Doc. 143, ¶¶ 46, 49, 55, 58, 65, 68, 74, 77. Moreover, the Court is not considering a damages issue here, but rather whether Bell's misconduct outweighs any responsibility that may be attributed to Eide Bailly's alleged negligence. As the comparative responsibility issue is not relevant to the *in pari delicto* defense and the damages issues do not differ, the Court finds no bar to the use of issue preclusion in this case.

**C.    Summary**

In sum, the decisions from the *McGladrey* action concerning the *in pari delicto* defense apply to this case. Specifically, then, it is established that Bell engaged in "intentional misconduct on behalf of the Funds" that "increased the Funds' exposure to the losses that

14

resulted when the Ponzi scheme ultimately fell apart." *McGladrey III*, 2014 WL 1389478, at *4 (detailing the roundtrip transactions in which Bell engaged); *see also id.* at *3–4 (discussing Bell's material misrepresentations about the lockbox account and the effect these representations had on "allowing Petters' scheme to flourish undetected"). *McGladrey III*'s findings, affirmed in *McGladrey IV*, thus support the application of the *in pari delicto* defense to the Trustee's claims against Eide Bailly, where the Trustee alleges that, like McGladrey, Eide Bailly was negligent in failing to discover the Ponzi scheme in its audit, even without having to address the truth of those allegations. *See* Doc. 73 ¶ 15; *Christians*, 733 N.W.2d at 814–15 (court could presume defendant's negligence and still find that plaintiff was barred by *in pari delicto* from recovering where plaintiff was at least equally responsible for the wrongdoing); *McGladrey IV*, 792 F.3d at 788 (*in pari delicto* applies "to a claim by the Funds, which raised money via deceit, against an auditor that negligently failed to detect a different person's fraud"). Consequently, under the *in pari delicto* doctrine, the Trustee cannot recover the losses he asserts on the Funds' behalf from Eide Bailly.

## CONCLUSION

For the foregoing reasons, the Court grants Eide Bailly's motion for summary judgment [109] and enters summary judgment for Eide Bailly. This case is terminated.

Dated: April 5, 2016

_____
SARA L. ELLIS
United States District Judge